76 F.3d 47
 Marshall O. CROWLEY, Jr., Plaintiff-Appellant,
v.
Edward COURVILLE, as ZBA Member; Edward Courville,
Individually; Kevin Guidera, as ZBA Member; Kevin Guidera,
Individually; Ronald Hill, as ZBA Member; Ronald Hill,
Individually; Richard W. McMahon, as ZBA Member; Richard
W. McMahon, Individually; Planning Board of the
Incorporated Village of Southampton; Peter Enstine, as
Planning Board Member; Peter Enstine, Individually;
Benjamin Foster, as Planning Board Member; George Lewis, as
Planning Board Member; George Lewis, Individually; David
Ricereto, as Planning Board Member; David Ricereto,
Individually; Mardooni Vahradian, as Planning Board Member;
Mardooni Vahradian, Individually; Benjamin Foster,
Individually; Gerald Kemp, as Building Inspector of the
Incorporated Village of Southampton, Defendants,
and
Board of Trustees of the Incorporated Village of
Southampton; Board of Zoning Appeals of the Incorporated
Village of Southampton; Elise Korman, as ZBA Member; Elise
Korman, Individually; Harold Steudte, as former ZBA Member;
Harold Steudte, Individually, Defendants-Appellees.
 No. 99, Docket 95-7160.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 18, 1995.
Decided Jan. 26, 1996.
 
 Marshall O. Crowley, Jr. Southampton, New York, pro se, for Plaintiff-Appellant.
 John R. Wright, New York City (James Pitarro, Marshall, Conway & Wright, P.C., New York City, Frank H. Wright, Wright Manning & Rips, New York City, of counsel), for Defendants-Appellees.
 Before: MINER, MAHONEY, and CABRANES, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiff-appellant Marshall O. Crowley, Jr. appeals pro se from a judgment entered January 13, 1995 in the United States District Court for the Eastern District of New York, Arthur D. Spatt, Judge, in favor of defendants Edward Courville, Kevin Guidera, Ronald Hill, Richard W. McMahon, the Planning Board of the Incorporated Village of Southampton (the "Planning Board"), Peter Enstine, Benjamin Foster, George Lewis, David Ricereto, Mardooni Vahradian, Gerald Kemp, as Building Inspector of the Incorporated Village of Southampton, and defendants-appellees Board of Zoning Appeals of the Incorporated Village of Southampton (the "Zoning Board"), Elise Korman, and Harold Steudte.[1] This judgment incorporated: (1) a June 7, 1994 order that granted summary judgment to all defendants with respect to Crowley's substantive due process claim; (2) a trial ruling awarding judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) to all defendants except the Zoning Board, Korman, and Steudte on Crowley's equal protection claim prior to its submission to the jury; (3) a jury verdict in favor of the Zoning Board, Korman, and Steudte on Crowley's equal protection claim; and (4) a posttrial memorandum and order of the district court that granted judgment as a matter of law to the Zoning Board, Korman, and Steudte on Crowley's equal protection claim; and (4) a posttrial memorandum and order of the district court that granted judgment as a matter of law to the Zoning Board, Korman, and Steudte on the bases that (a) there was inadequate evidence to support a judgment against them, and (b) Korman and Steudte were entitled to qualified immunity.[2]
 
 Affirmed.Background
 
 2
 This suit involves a parcel of property located in the center of the business district of the Village of Southampton, New York (the "Village"). Crowley purchased the property in 1978. However, because Crowley's constitutional claims are based upon a parking variance issued prior to Crowley's purchase of this property, we briefly review the prior uses of this tract of land.
 
 
 3
 Before 1975, Crowley's property was used as a gas station, auto repair shop, and auto junkyard. The single building located on the land fell into disrepair. In 1975, one Anne Johnston purchased the lot as a site for her real estate brokerage business. She developed a site plan that contemplated the renovation of the gas station into a 2,400 square foot office building, and the construction of a new two-story, 7,200 square foot office building.
 
 
 4
 To proceed with this development, Johnston had to obtain an off-street parking variance from the local zoning regulations. Section 116-14 of the Zoning and Building Construction Regulations for the Village of Southampton (the "Zoning Regulations"), enacted in 1973, required one parking space per 150 square feet of gross floor space intended for office use and one space for every 200 square feet of gross floor space intended for retail use.[3] Thus, sixty-four off-street parking spaces were required for Johnston's plan to build two office buildings totaling 9,600 square feet. Because only nine parking spaces were planned, Johnston applied for a variance of fifty-five parking spaces. The Zoning Board awarded Johnston this variance (the "1975 Variance") in an effort to eliminate what was considered to be an eyesore at the center of the village.
 
 
 5
 However, the Zoning Board conditioned its decision to grant the parking variance on the property's continued use for office, rather than retail, purposes. The minutes of the Zoning Board meeting of June 26, 1975[4] that considered Johnston's application state:
 
 
 6
 There was a discussion regarding the first floor being used as retail shops and it was determined that the applicant would have to come back to this Board for other than office use as the [variance] application was advertised as office building.
 
 
 7
 After obtaining the 1975 Variance, Johnston renovated the existing building on the lot, but never constructed the new 7,200 square foot office building.
 
 
 8
 In 1978, Crowley purchased the property and conducted a successful real estate brokerage business on the site for the next ten years. In December 1989, Crowley developed a new plan for the construction of a 12,800-square-foot retail building to replace the existing 2,400-square-foot office building.[5] This expansion provided, however, for only nine off-street parking spaces to service the site.
 
 
 9
 Crowley, then represented by counsel, sought the Planning Board's approval of his proposed development at its meeting on December 4, 1989. Crowley attempted to rely upon the 1975 Variance, but "[t]he [Planning] Board felt that since this is a new and larger building for retail use instead of office [use], it is a totally new application and the parking variance granted in 1975 would not run with the land." Accordingly, the Planning Board requested that the application be forwarded to the Zoning Board "for an interpretation of the 1975 decision as it relates to parking for this new building."[6]
 
 
 10
 Crowley did not make such an application to the Zoning Board immediately. Instead, on January 8, 1990, Crowley's counsel appeared before the Planning Board to renew Crowley's application, asserting that Crowley did "not concede to the Board[']s determination that [Crowley] must go back to [the Zoning Board] for a clarification of [the 1975 Variance]." The Building Inspector, however, "was adamant that this was an entirely new application which requires a new [Zoning Board] decision and should not be before the Planning Board at this time." Crowley renewed his application before the Planning Board at meetings on February 5, March 5, April 2, and May 7, 1990, without success.
 
 
 11
 Finally, on May 29, 1990, Crowley presented an application to the Zoning Board seeking a determination that he was entitled to apply the 1975 Variance to his proposed development, and requesting "any and all other variances or other relief or interpretation necessary to permit the construct[ion] of the ... retail store complex." The Zoning Board considered Crowley's proposal at its meetings on June 28 and July 26, 1990, and rejected it in a decision dated August 23, 1990, stating that "this Board granted the [1975 Variance] based upon representations and testimony given to it with regard to the use of the property for offices and not for retail use," and that the 1975 Variance "only applied to the proposal before the Board at that time for construction of office space."
 
 
 12
 The Zoning Board reiterated its position in decisions dated November 28, 1990 and December 19, 1991, and Crowley continued to press his case at meetings of the Zoning Board and Planning Board from September 1990 through November 1991. In December 1991, the mortgagee of Crowley's tract took the property in lieu of executing upon its judgment of foreclosure. Crowley thereafter commenced this action, and now appeals from its adverse resolution in the district court.
 
 
 13
 As a final preliminary matter, we note that in 1981 and 1983, the Village amended the Zoning Regulations to require the payment of a $4,000 "off-street parking space fee" for each parking space for which a variance is granted (absent specification of a different amount by the Board of Trustees of the Village), which payments constitute a trust fund for use by the Village in meeting its requirements for public parking. Thus, a fresh variance providing the 55-space waiver granted by the 1975 Variance would have entailed a cost of $220,000 unless a special dispensation was provided by the Board of Trustees. Crowley indicated a willingness to pay this fee "if necessary" at the April 2, 1990 meeting of the Planning Board, and reiterated this willingness at an October 25, 1990 meeting of the Zoning Board, but took the position at the Planning Board's October 24, 1991 meeting that the fee was not warranted.
 
 Discussion
 
 14
 As previously indicated, see supra note 2, Crowley advances both substantive due process and equal protection arguments on this appeal. We consider them in turn. Because these issues were decided in the district court by a combination of (1) a grant of summary judgment pursuant to Fed.R.Civ.P. 56, (2) a jury verdict, and (3) two orders granting judgment as a matter of law, we will review the final judgment of the district court incorporating these prior rulings de novo. Cf. Natural Resources Defense Council, Inc. v. EPA, 725 F.2d 761, 767-68 (D.C.1984) (when decision under review would be affirmed under any standard of review, no standard need be selected). As will appear, affirmance is appropriate under any standard of review.
 
 
 15
 Crowley contends that the defendants violated his right to substantive due process by refusing to apply the 1975 Variance to his proposed construction of a retail building. In assessing a substantive due process claim in the context of land use regulation, this Court is always "mindful of the general proscription that 'federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies.' " Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir.1995) (quoting Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir.1986) (alterations in Zahra )). Given this concern, a party asserting a deprivation of substantive due process must first establish a valid property interest within the meaning of the Constitution. Zahra, 48 F.3d at 680. Second, the party must demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest. Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir.1992), cert. denied, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).
 
 
 16
 In order to establish a constitutionally cognizable property interest, a litigant must demonstrate "a 'legitimate claim of entitlement' to the benefit in question." Zahra, 48 F.3d at 680 (quoting RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 915 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989), and Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58 (2d Cir.1985)). "The [strict entitlement] analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." Zahra, 48 F.3d at 680 (collecting cases).
 
 
 17
 Crowley's substantive due process claim clearly fails to satisfy this standard. Section 116-27 of the Zoning Regulations vests the Zoning Board with discretionary authority to grant variances "where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of [the Zoning Regulations]." § 116-27(A). Subdivision (B) of § 116-27 provides "[g]uiding principles" for the exercise of this authority, and subdivision (C) adds "[g]eneral standards." Thus, § 116-27 vested the Zoning Board with extremely broad discretion to grant or deny a variance to Crowley.
 
 
 18
 Further, § 116-27(B)(2) provides that "[e]very variance granted by the [Zoning Board] may be made subject to such conditions and safeguards as the Board shall deem to be applicable to the particular case." When the Zoning Board granted the 1975 Variance, it stated explicitly that a fresh variance application would be required for any use "other than office use." In the face of this record, Crowley cannot plausibly contend that he had a legitimate claim of entitlement to the application of the 1975 Variance to his proposed retail development fourteen years after the 1975 Variance was granted, or that the Zoning Board had no discretion to deny that application of the 1975 Variance.
 
 
 19
 Because we find that Crowley had no property interest in a new or existing parking variance, we need not decide whether the Zoning Board acted in an "arbitrary or irrational" manner, Southview Assocs., 980 F.2d at 102, by denying him such relief. We note, however, that such a ruling may be made "only when government acts with 'no legitimate reason for its decision,' " id. (quoting Shelton v. City of College Station, 780 F.2d 475, 483 (5th Cir.) (in banc), cert. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986)), and that the Village authorities certainly had legitimate reasons for their refusal to allow Crowley to apply the 1975 Variance to his proposed retail development more than a decade after the variance was granted.
 
 
 20
 Crowley also argues that the defendants selectively enforced the requirements of § 116-14 against him, while granting parking variances freely to other owners regardless of their intended use, in violation of his right to equal protection of the laws. A violation of equal protection by selective enforcement arises if:
 
 
 21
 (1) the person, compared with others similarly situated, was selectively treated; and (2) ... such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.
 
 
 22
 LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir.1994) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir.1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)). Because Crowley does not allege selective treatment based upon his race, religion, or any intentional effort by defendants to punish him for exercising his constitutional rights, Crowley must demonstrate that defendants maliciously singled out his application for relief from the parking ordinance with the intent to injure him. See Zahra, 48 F.3d at 683-84.
 
 
 23
 He fails in this effort. First, a demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith. See id. at 684 ("The evidence suggesting that [plaintiff] was 'treated differently' from others does not, in itself, show malice." (citing LeClair, 627 F.2d at 610-11)). Second, defendants convincingly argue that the comparisons to which Crowley points mostly reflect favorable variance rulings by the Zoning Board after an exercise of its discretion, rather than an effort (as here) to require the Zoning Board to apply a stale variance to a revised use without any discretionary deliberation concerning the normally applicable considerations.
 
 
 24
 In sum, Crowley had no constitutional right to require the Village authorities to apply the 1975 Variance to his proposed retail development. The Village's reasonable view of the matter was expressed, inter alia, in the Zoning Board's November 15, 1990 decision, which stated that: "[T]he parking situation in the general vicinity of the subject property has become worse instead of better and we are most reluctant to exacerbate it by 'interpreting' [the 1975 Variance] as [Crowley] wishes."
 
 Conclusion
 
 25
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The caption of this appeal includes as a defendant-appellee the "Board of Trustees of the Incorporated Village of Southampton," but the judgment from which this appeal is taken makes no mention of this entity. In view of our disposition of this appeal, this discrepancy is immaterial
 
 
 [2]
 The distinction in the caption between defendants and defendants-appellees is somewhat confusing. Crowley's notice of appeal specifies an appeal from "various rulings entered in this action on January 13, 1995," and his appeal briefs address both his substantive due process and equal protection claims. His main appeal brief states that the issues presented are whether the Planning Board (a defendant) and the Zoning Board (a defendant-appellee) violated his constitutional rights to substantive due process and equal protection, and if so, whether Korman (a defendant-appellee) and Vahradian (a defendant) were properly accorded qualified immunity. In view of our disposition of the merits of this appeal, (1) the categorization between defendants and defendants-appellees is immaterial, and (2) we do not reach the issue of qualified immunity
 
 
 [3]
 In 1991, the Zoning Regulations were amended to require one parking space for each 180 square feet of gross floor space intended for either office or retail use
 
 
 [4]
 Except as otherwise specified, all quotations in the balance of this "Background" section are from the minutes of the referenced meetings of the Zoning Board or Planning Board
 
 
 [5]
 By letter to the Planning Board dated April 15, 1991, Crowley submitted a revised plan for a 9,616 square foot retail building
 
 
 [6]
 Under Southampton's local law, three government entities must approve new construction projects. First, if a plan indicates a possible or planned violation of any zoning regulation, the owner must apply to the Zoning Board for a variance, or a finding that no variance is necessary. After a variance is acquired, or found unnecessary, the plan is submitted to the Planning Board for approval of, inter alia, its aesthetic aspects. Finally, construction must be approved by the Building Inspector to ensure compliance with local and state building codes