**PENLYN DEVELOPMENT CORP., Plaintiff,**

v.

**THE INCORPORATED VILLAGE OF LLOYD HARBOR, The Planing Board of the Village of Lloyd Harbor, and Duncan Elder, Gilbert Henoch, Dudley Keyes, Robert Maniello, and Joan Westphal, individually and in their present or former official capacities as Members of the Planning Board of the Incorporated Village of Lloyd Harbor, Defendants.**

No. CV–96–4555 (ADS).

United States District Court, E.D. New York.

June 16, 1999.

Lamb & Barnosky, LLP, Melville, NY, Joel M. Markowitz, of counsel, for Plaintiff.

Certilman, Balin, Adler & Hyman, LLP, East Meadow, NY, Neil H. Angel, of counsel, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On September 16, 1996 the plaintiff, Penlyn Development Corporation ("Penlyn"), filed a complaint against the defendants, the Incorporated Village of Lloyd Harbor (the "Village"), and various Planning Board members of the Village (the "individual board members"), in their individual and official capacities (collectively, the "defendants"), alleging that they persistently and irrationally refused to permit the subdivision by Penlyn of a 6.8 acre parcel of land (the "Subject Premises") on Banbury lane in the Village into three lots of at least two acres each, in violation of its substantive due process and equal protection rights pursuant to 42 U.S.C. §§ 1983, 1985, 1988 and the Fourteenth Amendment to the United States Constitution. Presently before the Court is the defendants' motion for summary judgment, seeking to dismiss the plaintiff's complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

## I. BACKGROUND

Penlyn is the owner of a 6.8 acre residential parcel located on Banbury Lane, Village of Lloyd Harbor, County of Suffolk, State of New York. The Planning Board of the Village is the administrative body charged by the New York State Village Law and the Village Code with the duty to hear and determine applications for the approval of preliminary and final subdivisions and partitioning plats. Zoning within the Village requires lots of at least two acres.

On November 25, 1994, the plaintiff submitted to the Planning Board an application for preliminary approval of the partitioning of the Subject Premises into three separate lots, each equal to or greater than two acres in area and each fronting on Banbury Lane. On December 20, 1994 in connection with its application, the plaintiff submitted to the Planning Board a map of the Subject Premises labeled "Final Partitioning Plat." The Proposed plat was later revised on January 5 and January 12, 1995. On March 7, 1995, a public hearing was held in connection with the plaintiff's application. Strong opposition by neighbors of the Subject Premises was voiced. The plaintiff asserts that at the hearing, it presented proof that the partitioning satisfied all of the requirements of the Zoning Ordinance and all of the standards set forth in the Subdivision Regulations of the Village. At the conclusion of the proceeding, the public hearing was closed by a vote of the Planning Board.

On May 11, 1995, pursuant to the State Environmental Quality Review Act ("SEQRA"), the Planning Board issued a "negative declaration" whereby it determined "that the proposed action ... will not have a significant effect on the environment and that a Draft Environment Impact Statement will not be prepared." On June 1, 1995, the Planning Board and the plaintiff stipulated that the time within which the Planning Board was required to act upon the plaintiff's application for partitioning approval would expire on July 12, 1995. As such, the plaintiff's application was placed on the Planning Board's agenda for a meeting to be conducted on the evening of July 12, 1995.

At the meeting, on that date, the Planning Board called the plaintiff's application and announced that it was reserving decision. Approximately one week later, the Planning Board filed with the Village Clerk a one-page document that indicated that the plaintiff's application was "denied upon grounds of existing Village determination of no further subdivision." On August 21, 1995, a formal resolution of the Planning Board (the "1995 Determination") denying the plaintiff's partitioning application was filed with the Village Clerk. The 1995 Determination was predicated upon a decision made by the Planning Board 20 years earlier in connection with the subdivision of an 18–acre parcel known as "Woodwynne," of which the Subject Premises were a part. According to the 1995 Determination, the prior planning board decision precluded future development of Woodwynne in exchange for approval of access by means of a substandard roadway. The denial was also predicated upon the absence of any change of circumstance that would warrant relief from the foregoing restriction.

On August 7, 1995, the plaintiff commenced an Article 78 proceeding against the Planning Board and the Clerk of the Village in the Supreme Court of the State of New York, County of Suffolk seeking judgment:

(a) directing the Clerk of the Village of Lloyd Harbor to issue a certificate confirming that petitioner's application for the partitioning of its land in the Village had been granted on default by reason of the failure of the Planning Board to take action upon such application within the time limited by village law § 7–728(6), or, in the alternative,

(b) annulling the determination of the Planning Board which purported to deny petitioner's application for partitioning of its land, and directing the Planning

Board to grant such application and to sign petitioner's partitioning plat, subject only to such reasonable conditions as the Planning Board might choose to impose in the sound exercise of its discretion, on the ground that the challenged determination was made in violation of lawful procedure, was affected by an error of law, and was arbitrary and capricious and an abuse of discretion.

On January 31, 1996, the State Court denied the plaintiff's request for a certificate of default and the plaintiff's request that the Court direct the Planning Board grant its application. The Supreme Court did, however, annul the determination of the Planning Board as arbitrary and capricious. Specifically, the State Court held that:

· [t]he determination of respondent Board in this matter, is considered to have been arbitrary and capricious in that it did not take into account the changed conditions in the use of Banbury Lane, and further that it assumed an unchangeability of its prior decision with respect to the subject premises, despite the fact that the restrictions were not premised on any type of legislative enactments.

The subject determinations of the ZBA is annulled and set aside and this matter is remanded to the Village Planning Board for a *de novo* consideration of petitioner's application for preliminary plat approval.

By judgment, entered on March 29, 1996, the Supreme Court remanded the proceeding to the Planning Board "for a *de novo* determination of petitioner's application for preliminary partitioning approval not inconsistent with the written decision of this Court." On May 9, 1996 a public hearing was conducted and the Planning Board once again voted to deny the plaintiff's application upon the grounds that (a) the road giving access to the Subject Premises was paved to a width less than that required by the Village's Planning Regulations, pursuant to a purported understanding with the developer of Woodwynne that the 18–acre parcel would not be further subdivided; (b) there had been no change in the use of the portion of the road upon which the Subject Premises front; and (c) the continued "inadequacy" of the road was sufficient reason for the Board to adhere to its determination barring further subdivision of any portion of Woodwynne.

The plaintiff contends that prior to the rendering of the Planing Board's May 9, 1996 decision, it highlighted the fact that there were stretches of Banbury Road east of the Laboratory that were at least as narrow as the portion of the Banbury Road at issue, and that the Planning Board could grant preliminary partitioning approval conditioned upon the widening of the pavement within the 50–foot Woodwynne right of way. However, according to the plaintiff, the Planning Board refused to consider this condition and suggested that it was "not part of the application before us."

On May 13, 1996, a formal resolution of the Planning Board (the "1996 Determination") denying the plaintiff's partitioning application was filed with the Village Clerk. The 1996 Determination stated that:

14. Access to the premises is over a roadway approximately 14.5 feet wide rather than the required 18 feet, which substandard road was permitted by prior Planning Board decisions in 1972, 1975 and 1977 at the request of the property owner at that time together with the voluntarily imposed restriction that no more than five (5) lots be permitted over the substandard roadway.

15. Without regard to the prior restriction, it is clear that access to the premises is over a substandard roadway and is inadequate to provide access for the proposed additional lots.

16. Though the Planning Board recognizes that it has discretional authority to amend, modify or annul that prior re-

striction upon a proper showing by the Applicant, there has been no change of circumstance or other reason offered to justify an amendment, modification or annulment of the development restriction.

17. Though the Applicant has claimed a change in traffic and use in the roadway serving the premises as a consequence of the use of the roadway by the Cold Spring Harbor Laboratory adjacent to its property, access to the Cold Spring Harbor Laboratory property occurs at a point on Banbury Lane east of the subject property and before reaching the subject parcel. There has been no increased traffic or increased use of that portion of Banbury Lane over which the subject parcel proposes its access either as a consequence of the Cold Spring Harbor property or any other adjacent property.

The plaintiff argues that the 1996 Determination, like the 1995 Determination, was grounded upon the Planning Board's belief that a prior planning board precluded future development of Woodwynne in exchange for approval of access by means of a substandard roadway, and upon the absence of any change of circumstances that would warrant relief from the foregoing restriction. As a result, the plaintiff contends that the Planning Board failed to carry out the mandate of the State Court to render "a *de novo* determination of petitioner's application for preliminary approval not inconsistent with the written decision of [the] Court."

In addition, the plaintiff claims that to the extent the 1996 Determination was based upon a finding that "access to the premises is over a substandard roadway" that is "inadequate to provide access for the proposed additional lots,"

(a) both the plaintiff's expert and the Village Engineer confirmed, at the public hearing held on March 7, 1995 and at other meetings of the Planning Board, that the addition of two residential lots, as proposed by the plaintiff, would have no impact upon traffic in the surrounding community or upon the ability of the Village to deliver public services, and that the road was adequate to accommodate two-way traffic and was otherwise a sufficient means of access to the two additional homes; (b) there was not a scintilla of evidence before the Planning Board to support the conclusion that the westerly extension of Banbury Lane was in any respect 'inadequate'; (c) the portion of Banbury Lane upon which the Subject Premises front is no narrower than other portions of the road upon which the Cold Spring Harbor Laboratory is dependent for access to the 16–room dormitory facility erected in or about 1979; (d) the allegedly 'substandard' road giving access to the Subject Premises is as wide or wider than other roads throughout the Village, including roads that are far more densely populated than Banbury Lane; and (e) the neighboring homeowners who opposed the partitioning of the Subject Premises have, since 1975, vocally opposed any suggestion that Banbury Road be widened because a wider road in the area would detract from its residential atmosphere.

Finally, the plaintiff submits that "to the extent that the 1996 Determination was predicated upon any perceived inadequacy in the width of the paved road upon which the Subject Premises front, the Board could have conditioned partitioning approval upon the widening of the pavement within the 50–foot right-of-way set forth on the Map of Woodwynne and in the partitioning plat, a condition that plaintiff had previously agreed to accept."

Although not contained in the plaintiff's complaint, approximately six weeks after the May 1996 Planning Board meeting, the plaintiff entered into a contract with Paul and Joan Sobota for the sale of the Subject Premises. Prior to the closing in January 1997, at the Sobotas' discretion and at their expense, Penlyn continued to pursue subdivision approval. In a new Article 78

proceeding challenging the 1996 Determination, Penlyn obtained a judgment on September 16, 1996 again annulling the Planning Board's denial of subdivision approval; this time directing that preliminary approval be granted, but that the Planning Board could condition approval on the plaintiff widening and replacing the access road. On December 17, 1996, preliminary approval of the subdivision was granted by the Board. On November 6, 1997, final approval was granted.

As a result of the 1996 Determination denying its application, the plaintiff submits that the defendants violated its Constitutional rights. Specifically, the plaintiff claims that the defendants violated its constitutional rights under the doctrine of Substantive Due Process and the Equal Protection Clause of the Fourteenth Amendment. The defendants argue that even after the Supreme Court's January 31, 1996 Order, the discretion vested in the Planning Board under the New York Village Law precludes a finding of a constitutionally protected property interest. As a result of the discretion vested in the Planning Board, the defendants assert that the substantive due process claim should be dismissed. The defendants also contend that the equal protection claim should be dismissed as the plaintiff has raised no material issue of fact that: (1) the plaintiff was selectively treated from other, similarly situated land developers; or (2) the defendants acted with the intent to inhibit or punish the exercise of a constitutional right or with the requisite malice or bad faith to injure. Finally, the individual Planning Board members assert that summary judgment dismissing the complaint against them is appropriate on the basis of qualified immunity. In support of their qualified immunity argument, the defendants submit that their decision was a discretionary act that did not violate any clearly established constitutional right of the plaintiff, and was objectively reasonable.

## II.  DISCUSSION

### A.  *Summary Judgment Standard*

A court may grant summary judgment only "when the evidence shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 256 (2d Cir.1999) (citing *Urena v. Biro Mfg. Co.,* 114 F.3d 359, 362 (2d Cir.1997)); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996); Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *see Vann v. City of New York,* 72 F.3d 1040 (2d Cir. 1995).

However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *Ku-*

lak v. City of New York, 88 F.3d 63, 70 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. Holt v. KMI–Continental, Inc., 95 F.3d 123 (2d Cir.1996); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." Gallo v. Prudential Residential Services, 22 F.3d 1219, 1224 (2d Cir. 1994).

It is within this framework that the Court addresses the present motion to dismiss.

B. *Substantive Due Process*

■ "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir.1995) (quoting Lowrance v. Achtyl, 20 F.3d 529, 538 (2d Cir.1994)).

In one of the few successful substantive due process cases, and one tried before this Court, the Second Circuit stated in Walz v. Town of Smithtown, 46 F.3d 162 (2d Cir.), cert. denied, 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995) that:

When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis, which has its origins in the Supreme Court's decision in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of the analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); Sullivan v. Town of Salem, 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in a certificate of occupancy); Yale Auto Parts v. Johnson, 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).

Walz, 46 F.3d at 167–68. In Roth, the Supreme Court set forth the following test to guide the courts in determining whether such property interest exists: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . . He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Thus, in order to establish a property interest sufficient to support a substantive due process claim, the plaintiff must establish a "'legitimate claim of entitlement' to the benefit in question." Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir.1995)) (internal citation omitted). "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 264 (2d Cir.1999). If there is such a property interest, Penlyn must demonstrate that the defendants acted in an outrageously arbitrary or irrational manner in depriving the plaintiff of that interest. See id.

The key to determining the existence of a property interest is the extent to which the deciding authority may exercise discretion in reaching its decision, rather than on the estimate of the likelihood of a certain decision. Crowley, 76 F.3d at 52. The

Second Circuit has held that a plaintiff does not have a federal property right in a license or certificate unless, "there is either a certainty or a very strong likelihood that the application would have been granted." *See Yale Auto Parts*, 758 F.2d at 59. If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a superseding body to local administrative agencies. *Crowley*, 76 F.3d at 52. In this regard, the Second Circuit has emphasized that:

> If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test of *Auto Parts Yale*—"certainty or a very strong likelihood" of issuance—must be applied with considerable rigor.

*RRI Realty Corp.*, 870 F.2d at 918. Rather than focusing on the probability of the grant or denial of the application, the issue turns on the discretion that may be exercised by the governmental entity in granting the application. *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996); *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir.1995).

■ The plaintiff does not dispute the fact that the Planning Board of the Village of Lloyd Harbor generally has wide discretion in approving or denying approval of a subdivision plat. *See* N.Y. Village Law § 7–730. The plaintiff's substantive due process claim, therefore, centers on its belief that the State Supreme Court's January 31, 1996 Order divested the Planning Board of its wide discretion, thus establishing a legitimate claim of entitlement to approval of the subdivision application.

The Supreme Court's January 31, 1996 Order did not merely annul the Planning Board's 1995 determination, it also remanded the proceeding to the Planning Board for a *de novo* consideration of the plaintiff's application for preliminary plat approval. In particular, the Supreme Court directed the Planning Board to take into account the changed conditions in the use of Banbury Lane, and not to assume that because of its prior decision change with respect to the subject premises could not take place. The resolution of the defendants' motion for summary judgment, as it pertains to the plaintiff's substantive due process claim, hinges on whether the Supreme Court's decision stripped the Planning Board of its customary discretion, thereby establishing a property interest sufficient to support a substantive due process claim.

The plaintiff asserts that following the Supreme Court's January 31, 1996 Order, the discretion that remained in the Planning Board was purely theoretical, thus providing a legitimate claim of entitlement to approval of its subdivision application. In light of this expectation, the plaintiff argues that when the defendants subsequently denied the plaintiff's application for a second time, the defendants deprived the plaintiff of its property interest and violated the substantive due process doctrine. On the other hand, the defendants interpret the Supreme Court's decision to continue to afford the Planning Board its discretionary authority to deny the application as long as they conducted a *de novo* review in accordance with the January 31, 1996 Order. As such, the defendants conclude that the Planning Board's wide discretion precluded the plaintiff's expectation of plat approval from rising to the level of a constitutionally protected property interest, even after the Supreme Court's January 31, 1996 Order.

It is the Court's view that the January 31, 1996 Order of the State Supreme Court, did not deprive the Planning Board of its wide discretion in approving or denying approval of the plaintiff's subdivision plat. Because the Planning Board retained its discretion, the plaintiff was not entitled, as a matter of right, to approval of its subdivision application and therefore does not have a property interest sufficient to support a substantive due process claim.

*See Crowley,* 76 F.3d at 52; *Zahra,* 48 F.3d at 680.

If the Supreme Court intended to divest the Planning Board of its wide discretion, it undoubtedly would have granted the plaintiff's request for an order directing the Planning Board to approve the subdivision application. It is implicit in the January 31, 1996 Order that the Planning Board retained its discretion as the Supreme Court did not direct the defendants to approve the application. In reaching its decision not to grant the plaintiff's subdivision application, it is clear that the Supreme Court declined to usurp the Planning Board's extant discretion. With reasonable certainty, the Supreme Court did not remand the proceeding with specific directions for a *de novo* consideration merely for the formality of having the Planning Board approve the plaintiff's application. If it so intended, the Supreme Court could have remanded the case with the specific instruction that the Planning Board grant the plaintiff's application.

Moreover, the discretion vested in the Planning Board after the Supreme Court's January 31, 1996 Order is not undermined by the fact that the Supreme Court ultimately ordered the Planning Board to approve the subdivision application at the second Article 78 proceeding. By way of example, the Second Circuit recently held in *Natale v. Town of Ridgefield,* 170 F.3d 258, 264 (2d Cir.1999), that in resolving a state law dispute, the fact that a state court ultimately granted approval of a land-use application is not sufficient to establish that a local agency previously lacked the discretion to deny the application. *Id.* In that regard, the Second Circuit stated that:

> Though the state court that finally determined that new subdivision approval was not required for lot 95 (the only one for which permits had been applied) issued a writ of mandamus, its conclusion that Natale's right was sufficiently clear to warrant mandamus relief as a matter of state law *does not* establish that Natale's entitlement to permits was so clear as to accord him a federally protectable property right in those permits.

*See Id.* (emphasis added).

The Court notes that at the time the Supreme Court directed the Planning Board to approve the plaintiff's subdivision application at the second Article 78 proceeding on September 16, 1996, the plaintiff undoubtedly had a legitimate claim of entitlement to approval of its application that rose to the level of a constitutionally protected property interest. However, after the Supreme Court's January 31, 1996 Order, the Planning Board still retained its discretion.

Finally, and significantly, under New York Village Law, planning boards are vested with the authority to weigh evidence and exercise their discretion in approving or denying approval of a subdivision plat. *Deepwells Estates Inc. v. Incorporated Village of Head of the Harbor,* 973 F.Supp. 338, 349 (E.D.N.Y. 1997) Occasionally, this discretion may yield inequitable and irregular results. Nevertheless, federal courts must be careful not to become zoning boards of appeal. *See Village of Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). State courts and other local administrative agencies have the jurisdiction and power to review and correct arbitrary and capricious decisions. The determination as to whether to approve an application for the partitioning of land is inherently a local concern which can be, and ultimately was, successfully resolved by a state court. To seek redress in federal court, a plaintiff must establish a legitimate claim of entitlement to the benefit in question. *See Yale,* 758 F.2d at 58. These policies serve to promote the principles of federalism and to avoid federal-state conflict in an area principally of state concern. *See id.* at 59.

Of particular relevance, the Second Circuit in *Natale* acknowledged that "uncertainty" as to the meaning of state law also precludes the existence of a federally protectable property interest. *See Natale*, 170 F.3d at 263. Otherwise, the Second Circuit reasoned, "permit claimants would regularly be entitled to present to federal courts their disputes concerning the interpretation of local and state land use regulations." *See id.* The Second Circuit further warned that federal courts are "not to be substituted for state courts as adjudicators of the meaning of zoning and other land use regulations." *See id.* This Court agrees with and adheres to these wise admonitions.

In this case, federal court is not the proper venue for resolving the "uncertainty" surrounding the possible interpretation of the State Supreme Court's January 31, 1996 Order. As a matter of law, the plaintiff cannot establish that it had a legitimate claim of entitlement to the approval of its subdivision application, or that the defendants acted so outrageously arbitrary as to constitute a gross abuse of governmental authority. The Supreme Court's January 31, 1996 Order remanding the proceeding to the Planning Board for a *de novo* determination of the plaintiff's application for preliminary partitioning approval did not demonstrate with any certainty or even a very strong likelihood that the application would thereafter be granted by the Planning Board. Accordingly, the defendants' motion for summary judgment dismissing Penlyn's substantive due process claim, is granted.

## C. *Equal Protection*

■ To state a valid cause of action under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively treated; and (2) such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Crowley*, 76 F.3d at 52–53 (citations omitted); *see Zahra*, 48 F.3d at 683; *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir.1992).

■ Recent Second Circuit decisions have been careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim. *See, e.g., Zahra*, 48 F.3d at 684 (recognizing that even where the plaintiff presents evidence of selective treatment, failure to demonstrate malice or bad faith requires dismissal of the claim). To establish that he was subject to selective treatment, a plaintiff must plead that he was similarly situated to other persons but was nevertheless treated differently. *Gagliardi*, 18 F.3d at 193; *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 61 (2d Cir.1985) (it is essential that the plaintiffs allege that "the defendants intentionally treated their application differently from other similar applications").

■ The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) (applying the standard in the context of a section 1981 claim).

■ As Penlyn does not allege selective treatment based upon race or religion, it must establish, therefore, (1) that it was, compared with others similarly situated, and selectively treated; and (2) either that the defendants acted with the bad faith intent to injure or with maliciousness when it denied Penlyn's subdivision application or, that the defendants intended to punish Penlyn for exercising its constitutional right to sue. *See Zahra*, 48 F.3d at 683– 84. While there may be a genuine issue of material fact regarding the issue of whether Penlyn was selectively treated as compared with others similarly situated, Pen-

lyn cannot, as a matter of law, establish that the defendants acted with bad faith or malice. Similarly, there is no evidence that Penlyn was punished for exercising its constitutional right to sue.

It should be noted that a demonstration of different treatment from persons similarly situated, without more, does not establish malice or bad faith. *See id.* at 684 ("The evidence suggesting that [plaintiff] was 'treated differently' from others does not, in itself, show malice." (citing *LeClair,* 627 F.2d at 610–11)). The plaintiff claims that the Planning Board, as it had done in the past, could have conditioned approval of its application upon the widening of Banbury Lane, and that refusing to do so constituted bad faith. The Court concludes, however, that the Planning Board did not act in bad faith or with malice when it denied Penlyn a similar approval conditioned upon the widening of Banbury Lane. There is no evidence that the two additional lots would have legal access over an easement to Banbury Lane pursuant to section 175–14(D) of the Village Code, which requires that all parcels created by a subdivision have legal access to a street. If the Planning Board had granted conditional approval without proof of access over the easement, the Planning Board would have violated its own Code by permitting a subdivision resulting in parcels without frontage on a street. Clearly, the Planning Board was not in a position to grant conditional approval without proof of access over the easement, and therefore the different treatment did not establish malice or bad faith.

Moreover, even the State Supreme Court's September 16, 1996 Order directing the Planning Board to approve Penlyn's subdivision, conditioned the approval on Penlyn widening and replacing the access road. Finally, as stated above, there is simply no evidence that the defendants punished Penlyn for exercising its constitutional right to sue. Accordingly, the defendants' motion for summary judgment, dismissing Penlyn's equal protection claim is granted.

### D. *Qualified Immunity*

■■■ The defendant also moves for summary judgment on the basis of qualified immunity. Government actors who perform discretionary functions are protected from liability for civil damages where their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Doe v. Marsh,* 105 F.3d 106, 109 (2d Cir.1997); *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996); *Zahra,* 48 F.3d at 686; *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). Even where the plaintiff's rights and the scope of the officials' permissible conduct are clearly established, the qualified immunity defense protects a governmental actor if it was "objectively reasonable" for the actor to believe that his actions were lawful at the time of the alleged unlawful conduct. *Marsh,* 105 F.3d at 109–10; *Lennon,* 66 F.3d at 420.

■■■ At the outset, the Court recognizes that "the defense of qualified immunity protects only individual defendants sued in their individual capacity, not governmental entities …." *Rodriguez v. City of New York,* 72 F.3d 1051, 1065 (2d Cir. 1995) (citing *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 [1991]).

■■■ Although the plaintiff's substantive due process and equal protection claims have been dismissed as a matter of law, the Court will briefly discuss the defendants' qualified immunity claim. The Court has already determined that the Planning Board retained its discretion after the Supreme Court's January 31, 1996 Order. As the individual defendants performed a discretionary function that did not violate a clearly established constitutional right when they denied the plaintiff's application, they may appropriately invoke the qualified immunity defense. *See Marsh,* 105 F.3d at 109. The Court

notes that because the individual defendants performed a discretionary function, it is unnecessary to consider whether it was "objectively reasonable" for the defendants to believe that it was lawful to deny the plaintiff's application following the Supreme Court's January 31, 1996 Order. *See id.* at 109–10. This is because the plaintiff cannot show that they had a "clearly established right" to the approval of the subdivision. *See Zahra*, 48 F.3d at 687. Consequently, the defendants' motion for summary judgment and dismissal of the substantive due process and equal protection claims against the individual defendants on the basis of qualified immunity, is granted.

### III. CONCLUSION

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby

**ORDERED**, that the defendants' motion for summary judgment seeking dismissal of the plaintiff's claim of substantive due process is **GRANTED**; and it is further

**ORDERED**, that the defendants' motion for summary judgment seeking dismissal of the plaintiff's equal protection claim is **GRANTED**; and it is further

**ORDERED**, that the defendants' motion for summary judgment seeking dismissal of the claims against the individual defendants on the basis of qualified immunity is **GRANTED**; and it is further

**ORDERED**, that the plaintiff's complaint is dismissed in its entirety; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**