T.S. HAULERS, INC., Plaintiff,

v.

TOWN OF RIVERHEAD, James Lull, Individually and as Councilman for the Town of Riverhead, Philip Cardinale, Individually and as Councilman for the Town of Riverhead, Christopher Kent, Individually and as Councilman for the Town of Riverhead, Defendants.

No. 01 CV 4219(ADS)(MLO).

United States District Court,
E.D. New York.

March 26, 2002.

Scheyer & Jellenick by Richard I. Scheyer, Smithtown, NY, William D. Wexler, North Babylon, NY, for Plaintiff.

Dawn C. Thomas, Town Attorney for the Town of Riverhead by Scott DeSimone, Deputy Town Attorney, Riverhead, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of claims by T.S. Haulers, Inc. ("T.S. Haulers" or the "plaintiff") that the Town of Riverhead (the "Town" or a "defendant"), Town Councilmen James Lull ("Lull" or a "defendant"), Philip Cardinale ("Cardinale" or a "defendant"), and Christopher Kent ("Kent" or a "defendant") (collectively, the "defendants") improperly denied it a special use permit to sand mine its property, thus violating 42 U.S.C. § 1983 by depriving the plaintiff of its rights to equal protection substantive and procedural due process, and committing a prima facie tort. Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

## I. BACKGROUND

The following facts are taken from the amended complaint. In 1995, T.S. Haulers purchased a 57–acre parcel of unimproved real property in the Town of Riverhead for the approximate sum of $550,000 (the "parcel"). The parcel is located within an "Industrial A" zoning district, and it borders New York State Route 25. Although not specifically stated in the amended complaint, it is apparent that T.S. Haulers wants to use the parcel of land to mine sand and gravel, which it would then offer for sale to the public.

According to the amended complaint, state and local law require that mining operations receive a permit from the New York State Department of Environmental Conservation (the "DEC") and a special permit from the Town before any sand mining can occur. T.S. Haulers states, "Upon information and belief, once a DEC permit has been issued, the Town's sole authority at that point is on the issues of traffic and reclamation."

In 1996, T.S. Haulers applied to the Town Board for a special permit to operate a non-nuisance industry, which apparently would allow the company to sand mine the parcel. On March 7, 1997, the Town Board denied the special permit application, stating that it was not certain whether sand mining was permitted on property in an "Industrial A" zoning district. The plaintiff claims that, in truth, the Town Board denied the permit application because it was under political pressure from various civil and environmental associations that are opposed to sand mining.

Within several months of the Town Board's denial, T.S. Haulers sought a ruling from the Zoning Board of Appeals for the Town of Riverhead (the "ZBA"), as to whether sand mining was permitted in an "Industrial A" zoning district. On December 16, 1997, the ZBA issued a decision finding that sand mining is a non-nuisance industry that is permitted in an "Industrial A" zoning district.

Meanwhile, in April 1997, the Town obtained an *ex parte* temporary restraining order from the Supreme Court of the State of New York, Suffolk County. The complaint does not indicate who was precluded from engaging in what activity, but given the context of the allegation, it reasonably can be inferred that T.S. Haulers was temporarily restrained from sand mining. In November 1997, the Town brought a contempt action against the plaintiff, in the Supreme Court, Suffolk County, based on an alleged violation of the April temporary restraining order. The parties reached a tentative settlement, whereby, among other things, the Town agreed to withdraw its temporary restraining order.

On or about February 23, 1998, the DEC issued T.S. Haulers a permit allowing it to sand mine the parcel. According to T.S. Haulers, that permit was based in part upon the DEC's belief that the Town's requirements had been satisfied.

In August 1998, the Town brought a state-court contempt proceeding against T.S. Haulers, allegedly in retaliation for DEC's issuance of the sand mining permit. The Supreme Court scheduled a hearing for December 8, 1998, but did not reach a final determination. The amended complaint does not indicate whether a hearing was held.

Meanwhile, the Town amended its Code to include an "Industrial C" zoning district in which sand mining was prohibited. The amendment had the effect of prohibiting sand mining on the plaintiff's 57–acre parcel. However, in December 1998, the New York Supreme Court (Emerson, J.S.C.) issued a decision that annulled the amendment, *see William Tintle, Sr. v. Town of Riverhead,* No. 98–21188. Although the amended complaint does not specifically allege that the defendants attempted to rezone the plaintiff's parcel within an "Industrial C" zoning district to prohibit them from sand mining, such a conclusion is reasonably inferred from the plaintiff's allegation that following the *Tintle* decision, the parcel owned by T.S. Haulers was once again zoned as "Industrial A."

While the *Tintle* case was pending in state court, the Town passed a resolution that prohibited sand mining in Industrial A and B zoning districts. T.S. Haulers con-

tends that after an unsuccessful attempt to rezone the parcel, the Town outlawed sand mining for the sole purpose of preventing T.S. Haulers from obtaining a sand mining permit.

In a decision dated April 13, 1999, the Supreme Court, Suffolk County, denied the Town's motion for summary judgment and directed the plaintiff to submit an application for a special permit under the Town Code. T.S. Haulers submitted the special permit application, but the Town refused to accept it on the ground that sand mining was now illegal in Industrial A and B zoning districts. T.S. Hauler's sought relief in state court, and the Supreme Court, Suffolk County, issued an order directing the Town to process the plaintiff's application for a special permit.

In early 2000, the Town's Planning Board recommended denying the plaintiff's special permit application, because placing sand and material on the ground constituted outdoor storage, which was prohibited by another section of the Code. T.S. Haulers contends that the reasons supporting the Town's denial were pretextual.

Subsequently, the Town Board held a hearing and moved to grant the plaintiff's application. However, at the time of the vote, one councilman was absent, another abstained, and the remaining three members voted against the application. Accordingly, the plaintiff's application for a special permit was denied.

An Article 78 proceeding was commenced to set aside the results of the Town Board hearing on the basis of procedural improprieties. The Supreme Court, Suffolk County (Hall, J.) declared the Town Board's decision denying the special permit null and void on the ground that the hearing was conducted and decided improperly. At the time the defendants filed their motion to dismiss, the Town Board had not set a new hearing date.

However, at the time the defendants filed their reply papers, the Town Board had issued a decision denying the plaintiff's application for a special permit. This Court is aware that the Article 78 proceeding is again pending in the Supreme Court before Justice Hall.

Further, T.S. Haulers contends sand mining has become a highly publicized and politicized issue. The company states that many local newspapers run articles describing alleged environmental dangers associated with sand mining. Therefore, claims the plaintiff, the defendants' actions are a response to publicity rather than an application of the law.

T.S. Haulers claims that it has been unable to obtain a building permit to construct buildings the company needs to house its machinery and equipment, because the defendants have refused to properly process its special permit application. Therefore, the plaintiff has been forced to purchase other property on which it can store its machinery and equipment.

In November 2000, Island Water Park, Inc. ("Island Water Park") sought to mine sand and gravel from a 40–acre parcel in order to create two lakes for water skiing. Island Water Park intends to sell the sand and gravel for the approximate sum of $2,500,000, which sum it will use to finance the project. In response to DEC's inquiry as to whether sand mining is permitted on the Island Water Park site, the Town stated that the ban on sand mining applies only to Industrial A and B zoning districts, not Planned Recreational Park districts, in which the Island Water Park site was located. The Town also stated that, in any event, Island Water Park would be exempt from the provisions of the Code, because the company was removing sand for construction instead of for the sole purpose of mining. T.S. Haulers claims that sand

mining is not permitted in the Planned Recreational Park district according to the Town Code. The amended complaint alleges that although T.S. Haulers is similarly situated to Island Water Park, the Town is applying the laws unequally so that Island Water Park is exempt from all the land use requirements to which T.S. Haulers is being subjected.

On April 20, 2001, the DEC issued a mining permit to the "Woods at Cherry Creek, LLC" (the "Woods at Cherry Creek") to dig sand and gravel from an 8.2 acre parcel of land to construct a golf course. The Town Board approved mining on the site, which was not located in an "Industrial A or B" zoning district but, rather, in a more restrictive zoning district.

On an unspecified date, the Town approved an application by PRG, Inc. ("PRG"), for a special permit to sand mine a site located diagonally across the street from the plaintiff's parcel. Upon hearing that the Town had granted the mining permit to PRG, T.S. Haulers contacted the DEC. According to the information provided by the DEC, the Town advised the DEC that sand mining permits were not necessary for PRG's site. As such, the DEC has not required a mining permit from PRG, and PRG has been able to sell the sand and gravel it is mining, which is the exact business in which the plaintiff wishes to engage.

On an unspecified date, the Town resolved to accept bids to mine the sand at the Youngs Avenue Town of Riverhead Landfill (the "Landfill"). The Town did not seek a special permit from the Planning Board prior to asking for bids. The plaintiff contends that the Town's action violates the Town Code, because the Landfill is in an Industrial A zone, where sand mining is not permitted.

The amended complaint raises four claims for relief. The first and second claims allege that the defendants deprived T.S. Haulers of its equal protection and substantive due process rights, respectively, and the third claim alleges that the defendants violated 42 U.S.C. § 1983 by depriving the plaintiff of its right to procedural due process. Although the reference to Section 1983 appears only in connection with the procedural due process claim, the Court construes the equal protection and substantive due process claims as having been brought pursuant to Section 1983. Indeed, for the plaintiff to recover money damages for the violations he alleges, Section 1983 is the statutory vehicle by which he must assert his claims. Accordingly, the Court views the plaintiff's first three claims as: (1) a Section 1983 equal protection claim; (2) a Section 1983 substantive due process claim; and (3) a Section 1983 procedural due process claim. The fourth claim in the amended complaint is for prima facie tort. Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## II. DISCUSSION

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. See King v. Simpson, 189 F.3d 284, 286 (2d Cir.1999); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996). As noted above, the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir.1999); Hayden v. County of Nas-

**460**

*sau,* 180 F.3d 42, 54 (2d Cir.1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *See Villager Pond,* at 378.

■ Because the Court is construing the first three claims for relief as having been brought pursuant to Section 1983, it is important to note that the statute provides, in relevant part, "Every person who, under color of [state law] subjects, or causes to be subjected, any … person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in a action at law [or a] suit [in] equity." A violation is proven when "a person acting under color of state law deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins,* 907 F.2d 1334, 1336 (2d Cir.1990) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Thus, a Section 1983 claim has two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution and laws. *See Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998); *Eagleston v. Guido,*

41 F.3d 865, 872 (2d Cir.1994). The defendants do not contest the allegation that they were acting under color of state law. Therefore, the Court's analysis of the first three claims for relief will focus only on the second element of each Section 1983 claim, which in this case is the alleged violation of the plaintiff's rights to substantive due process, equal protection, and procedural due process.

### A. The Section 1983 Substantive Due Process Claim

The defendants argue that the plaintiff has failed to state a substantive due process claim, because the plaintiff does not have a property interest in a special use permit. According to the defendants, the plaintiff cannot have a property in a special use permit, because property owners have no assurance that zoning laws will remain static.

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) (quoting *Lowrance v. Achtyl,* 20 F.3d 529, 538 (2d Cir.1994)). The Second Circuit set forth the standard for assessing a substantive due process claim in the context of land use regulation in *Walz v. Town of Smithtown,* 46 F.3d 162 (2d Cir.), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995):

When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claims is the well-developed property interest analysis, which has its origins in the Supreme Court's decision in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548

(1972). The focus of the analysis is on the nature of the applicant's interest in the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property in building permit), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem,* 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).

*Walz,* 46 F.3d at 167–68.

 Thus, in order to allege a property interest sufficient to support a substantive due process claim, the plaintiff must allege that it had a valid property interest in the benefit in question. *See Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999); *DLC Management Corp. v.Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir.1998); *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996). The focus of the Court's inquiry into the existence of a property interest is on the amount of discretion possessed by the agency issuing the permit, not on the probability of the agency issuing a favorable decision. *See DLC Management,* 163 F.3d at 132–33; *Walz,* 46 F.3d at 168; *RRI Realty Corp.,* 870 F.2d at 918. If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a superseding body to local administrative agencies. *See Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999); *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir.1995). Indeed, when considering this issue, the federal court should be mindful not to become a zoning board of appeals and not to review nonconstitutional issues of land use determinations by local administrative agencies. *See Crowley,* 76 F.3d at 52; *Sullivan v.*

*Town of Salem,* 805 F.2d 81, 82 (2d Cir. 1986). If the Court finds that the plaintiffs had an adequate property interest, then the plaintiffs still must allege that the defendants acted in an arbitrary or irrational manner in depriving the plaintiffs of that interest. *See Lisa's Party City,* 185 F.3d at 17; *Natale,* 170 F.3d at 263.

Notably, the Second Circuit has instructed that the "entitlement" test be applied with "considerable rigor." *RRI Realty,* 870 F.2d at 918. Even if "objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *Id.,* at 918.

 The Court finds that at this point in the litigation, the plaintiff has alleged a property interest in the special use permit it seeks for sand mining. According to the amended complaint, state and local law require that mining operations receive a permit from the DEC and a special permit from the Town before any sand mining can occur. The plaintiff further alleges that once a DEC permit has been issued, the Town's sole authority at that point is on the issues of traffic and reclamation.

Assuming that the plaintiff's allegations regarding the operation of state and local law are true and drawing all reasonable inferences in favor of the plaintiff, *see Koppel,* 167 F.3d at 127; *Jaghory v. New York State Dep't of Educ.,* 131 F.3d at 329, the Court finds that the Town has very little discretion when deciding whether a special permit should issue. The Court interprets the plaintiff's allegations to mean that once the DEC has issued a permit to sand mine, the Town must issue the same. In the Court's view, the plaintiff's description of the Town's "sole authority" means that the Town can regulate issues of traffic and reclamation that might arise from the sand

mining, but that once the DEC issues a permit to sand mine, the Town cannot preclude the mining operator from obtaining a Town permit.

The Court notes that later in the litigation it may become clear that the Town does exercise discretion when determining whether to issue a special permit to sand mine. But, at this early stage in the litigation, without the benefit of detailed information regarding Town Code provisions or other regulations that govern the issuance of a special permit and the operation of the Town Board, the Court finds that the amended complaint describes an absence of discretion sufficient to defeat a motion to dismiss the substantive due process claim. *See DLC Management*, 163 F.3d at 132–33; *Walz*, 46 F.3d at 168; *RRI Realty Corp.*, 870 F.2d at 918.

Because the plaintiffs have alleged a property interest in the special, the Court must determine whether the plaintiffs have also adequately alleged that the denial of that permit was arbitrary or irrational. *See Lisa's Party City*, 185 F.3d at 17; *Natale*, 170 F.3d at 263. According to the amended complaint, the Town Board denied the plaintiff's application for a special permit due to political pressure from environmental and conservation groups. The amended complaint also alleges that on two separate occasions, the Town amended its Code in such a manner that it became unlawful to sand mine on the plaintiff's parcel. First, after the ZBA found that sand mining was permitted in the zoning district where the plaintiff's parcel was located, the Town added an Industrial C zoning district in which sand mining was prohibited. The Town then rezoned the area in such a manner that the plaintiff's parcel fell within the new zoning district.

In addition, the Town passed a resolution that prohibited sand mining in Industrial A and B zoning districts. Thus, when the Supreme Court for the State of New York annulled the addition of the Industrial C zoning district, sand mining still was prohibited on the plaintiff's parcel. The amended complaint further alleges that the Town permitted other mining operators in the Town to sand mine, while it precluded the plaintiff from sand mining by denying its request for a special permit. Taking these assertions together and viewing them in the light most favorable to the plaintiff, the Court finds that the plaintiff has alleged an arbitrary denial of the special permit sufficient to withstand a motion to dismiss the Section 1983 substantive due process claim pursuant to Rule 12(b)(6).

**B. The Section 1983 Equal Protection Claim**

■ The defendants move to dismiss the plaintiff's equal protection claim on the ground that the amended complaint fails to allege that the parcel owned by T.S. Haulers is similarly situated to other properties. To state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible consideration such as race, religion, intent to punish the exercise of constitutional rights, or malicious bad faith intent to injure a person. *See Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996); *Zahra v. Town of Southold*, 48 F.3d 674, 683–84 (2d Cir.1995); *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994). The defendants challenge only the sufficiency of the first element of the plaintiff's equal protection claim.

In order to satisfy that element, the plaintiff must adequately allege that it was similarly situated to other entities that sought permission to sand mine their par-

cels but were treated differently. The best explanation for determining whether other persons are "similarly situated" was set forth in *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13 (1st Cir. 1989), and previously cited by this Court in numerous other decisions as follows:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review,* 889 F.2d at 19; *see Hampton Bays Connections, Inc. v. Duffy,* 127 F.Supp.2d 364, 375 (E.D.N.Y.2001); *Economic Opportunity Commission of Nassau County v. County of Nassau,* 106 F.Supp.2d 433, 439–40 (E.D.N.Y.2000). *Equus v. Town of Southampton,* 37 F.Supp.2d 582, 597–98 (E.D.N.Y.1999).

■ Applying these standards to the facts of this case, the Court finds that T.S. Haulers has adequately alleged that it is similarly situated to Island Water Park, the Woods at Cherry Creek, PRG, and the Landfill, but was treated differently. The amended complaint states that Island Water Park was located in a Planned Recreational Park district; the Woods at Cherry Creek was located in a zoning district that is more restrictive than an Industrial A or B zoning district; PRG was diagonally located across the street from the plaintiff's parcel; and the Landfill is located in an Industrial A zoning district. The Town permitted all four of these developers to mine sand on their parcels, while it denied the application by T.S. Haulers for a special permit to engage in the same activity.

In particular, the Town stated that Island Water Park could mine sand because it was doing so as part of a construction project, and the ban on sand mining does not apply to Planned Recreational Park districts. The amended complaint does not contain allegations describing the Town's reason for permitting the Woods at Cherry Creek to dig sand and gravel in a zoning district that is more restrictive than the Industrial A or B zoning districts. The amended complaint does indicate that the Woods at Cherry Creek sought to mine sand as part of the construction of a golf course. In regard to PRG, the Town said that the company did not require a special permit to sand mine property diagonally located across the street from the plaintiffs. Lastly, the amended complaint does not allege the Town's reasoning for their decision to permit sandmining at the Landfill, which, like the plaintiff's property, is located in an Industrial A zoning district.

Given these factual allegations, the Court finds that the amended complaint adequately alleges that T.S. Haulers, Island Water Park, the Woods at Cherry Creek, PRG, and the Landfill were similarly situated, as they were all companies seeking to mine sand on property located in the Town. In addition, Island Water Park and PRG are selling the sand and gravel they mine to the public, which the plaintiff would do were it given the opportunity. Thus, in light of the early stage of the litigation, accepting the plaintiff's allegations as true, and drawing all reasonable inferences in favor of the plaintiff, *see Koppel,* 167 F.3d at 127, the Court finds that T.S. Haulers has alleged that it is similarly situated to other entities.

The defendants claim that the plaintiff's parcel is not similarly situated to the four

properties described in the amended complaint, because Island Water Park, the Woods at Cherry Creek, PRG, and the Landfill are removing sand prior to some type of construction, whereas the plaintiff seeks to mine sand to sell to the public. The defendants' argument fails for two reasons. First, the defendants seek to argue the merits of the equal protection claim in the context of a 12(b)(6) motion to dismiss, which is not the purpose of the motion. *See Villager Pond*, 56 F.3d at 378 (holding that the issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims). Second, it is not necessary for the plaintiff to make the exact correlation demanded by the defendants in order to establish the similarly situated factor. *See Dartmouth Review*, 889 F.2d at 19. The amended complaint compares apples to apples, *see id.*, and the defendant's argument to the contrary is without merit.

Not only does the amended complaint allege that the T.S. Haulers is similarly situated to four other entities, it also states that the plaintiff was treated differently, in that the four other companies were permitted to mine sand but T.S. Haulers was not. Therefore, the Court finds that the amended complaint alleges facts sufficient to withstand the defendants' 12(b)(6) challenge to the first equal protection element.

The defendants do not base their motion to dismiss the equal protection claim on the sufficiency of the second element in the analysis. Accordingly, the Court declines to address the question of whether the amended complaint adequately alleges that the defendant's selective treatment of the plaintiff was based on an impermissible consideration such as race, religion, an intent to punish the exercise of constitutional rights, or malicious bad faith intent to injure a person. *See Crowley*, 76 F.3d at

52–53. Accordingly, the defendants' motion to dismiss the equal protection claim is denied.

## C. The Section 1983 Procedural Due Process Claim

The defendants also move to dismiss the plaintiff's procedural due process claim on the ground that an Article 78 proceeding is still pending in state court. Interestingly, the Court's review of the amended complaint did not reveal an independent procedural due process claim. Rather, the Court observed a substantive due process claim, an equal protection claim, a claim pursuant to 42 U.S.C. § 1983, and a claim for prima facie tort. Nevertheless, in a paragraph supporting the plaintiff's Section 1983 claim, the Court observed language that appears to allege a procedural due process violation. In particular, the plaintiff alleges that the defendants conduct "in delay[ing], obstructing, hindering ... failing to act to process ... to change the zone improperly, to ban mining improperly, to take plaintiff to the State Court on numerous occasions, and failing to properly process plaintiff's application over a period of years ... deprived plaintiff of its right to lawfully use the said property and violated its constitutional rights, which actions were without due process in violation of plaintiff's civil rights" (Amended Complaint ¶ 116). The Court, which must draw every reasonable inference in favor of the plaintiff. *See Koppel*, 167 F.3d at 127; *Jaghory*, 131 F.3d at 329, interprets the contents of this paragraph together with its placement under the Section 1983 claim to mean that the plaintiff is bringing a Section 1983 claim for a violation of its procedural due process rights.

"In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of 'an

opportunity ... granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case.'" *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). Here, the plaintiff sought meaningful review of the Town's decision in the state judicial system. *See id.* Indeed, T.S. Haulers initiated an Article 78 proceeding in state court and succeeded in reversing the Town's initial decision. Further, when the Town again denied the plaintiff's application for a special permit, T.S. Haulers initiated another Article 78 proceeding in state court, which case is still pending. The availability of such recourse, as a matter of law, precludes finding that the plaintiff has stated a claim for the denial of its procedural due process rights. *See id.* Accordingly, the defendants' motion to dismiss the Section 1983 procedural due process claim is granted, and the third claim for relief is dismissed.

## D. The Defendants' Claims of Immunity

The individual defendants move to dismiss the amended complaint on the ground of absolute and qualified immunity. Initially, the Court notes that although the motion by the individual defendants is based on affirmative defenses, they are reviewable on a motion to dismiss the complaint. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 348–49 (2d ed.1990)). However, the Court finds that neither the plaintiff nor the defendants have provided the Court with sufficient details regarding the defendants' alleged conduct for the Court to properly decide the issue at this time. Accordingly, the defendants' motion to dismiss the complaint on the basis of immunity is denied with leave to renew at the completion of discovery.

## E. As to the Claim of Prima Facie Tort

As a fourth claim for relief, T.S. Haulers asserts a prima facie tort stating that the defendants "committed the aforesaid acts solely for the purpose of inflicting economic harm on plaintiff and to cause plaintiff to lose its business and property rights" (Amended Complaint ¶ 120). The defendants move to dismiss this claim on the ground that it fails to allege (1) that the defendants' primary purpose was to harm the plaintiff; and (2) special damages with sufficient particularity to identify actual losses.

 The elements of prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful. *See Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). In order to recover for prima facie tort, the plaintiff must allege that:

> malevolence is the sole motive for [the] defendant's otherwise lawful act or ... unless [the] defendant acts from disinterested malevolence ... by which is meant that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.

*Id.* at 332, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459. Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's "sole motivation" was "disinterested malevolence," the complaint will be dismissed. *See id.; see also Chen v. United States,* 854 F.2d 622, 629 (2d Cir.1988); *Rabideau*

*v. Albany Medical Ctr. Hosp.*, 195 A.D.2d 923, 600 N.Y.S.2d 825, 827 (3d Dept.1993). Where there are mother motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of prima facie tort. *See Squire Records, Inc. v. Vanguard Recording Soc'y, Inc.*, 25 A.D.2d 190, 191–92, 268 N.Y.S.2d 251, 253–54 (1st Dept.1966); *see also Marcella v. A.R.P. Films, Inc.*, 778 F.2d 112, 118 (2d Cir.1985).

The second element of a claim for prima facie tort "is an allegation of special damages, fully and accurately stated with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts. Failure to do so lays the cause of action open to summary dismissal." *Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 486, 475 N.Y.S.2d 1, 6 (1st Dept.1984); *see Silverman v. City of New York*, Civ. No. 98–6277, 2001 WL 218943 *10 (E.D.N.Y. Feb. 2, 2001).

 Applying these standards to the facts of this case, the Court grants the motion to dismiss the plaintiff's claim for prima facie tort. First, as the defendants point out, the plaintiff fails to allege special damages with any particularity. The plaintiff's reference to "having to purchase facilities for his buildings and equipment off-site and to pay extensive legal fees . . . and filing fees" is not the itemization required to state a claim for prima facie tort.

Second, the plaintiff also fails to allege that the defendants' conduct was motivated solely by malevolence or that the acts themselves would otherwise be lawful. In fact, the plaintiff claims that the defendants' conduct was motivated by political pressure from environmental and conservation groups. The plaintiff also asserts that the defendants' conduct was illegal, in that their actions violated its equal protection and substantive due process rights.

In sum, the Court finds that the amended complaint fails to meet two prerequisites to a prima facie tort. Accordingly, the claim is dismissed pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. However, in light of the fact that leave to amend the complaint shall be freely given, Fed. R.Civ.P. 15(a), the Court grants the plaintiff's request for leave to amend its claim of prima facie tort.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is **GRANTED** in regard to the third and fourth claims, the Section 1983 procedural due process claim and the claim of prima facie tort, respectively; and it is further

**ORDERED**, that the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is **DENIED**, in regard to the first and second claims, the Section 1983 equal protection and Section 1983 substantive due process claims; and it is further

**ORDERED**, that the plaintiff is granted leave to file a second amended complaint to the extent that he may amend the prima facie tort claim; and it is further

**ORDERED**, that should the plaintiff seek to file an amended complaint as permitted by the Court, it shall do so within 15 business days of the date of this order.

**SO ORDERED.**