**Osei KNICRUMAH, Plaintiff,**

v.

**ALBANY CITY SCHOOL DISTRICT; Albany City High School; Lonnie E. Palmer, Individually, and in his official capacity; John Metallo, Individually, and in his official capacity; and Stuart Taylor, Individually, and in his official capacity, Defendants.**

No. 01–CV–419.

United States District Court, N.D. New York.

Jan. 16, 2003.

Capasso & Massaroni LLP, Schenectady, NY (Virginia A. Gettman, Esq., of counsel), for Plaintiff.

The Mills Law Firm, LLP, Clifton Park, NY (Maria Ashley, Esq., of counsel), for Defendants.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff, Osei Knicrumah ("plaintiff"), brought suit against defendants, Albany City School District and Albany City High School ("municipal defendants"); Lonnie Palmer ("Palmer"), Individually, and in his official capacity as Superintendent of Albany City High School; John Metallo ("Metallo"), Individually and in his official capacity as Principal of Albany City High School; and Stuart Taylor ("Taylor"), Individually, and in his official capacity as an employee of Albany City High School, alleging four causes of action:

In his *first* cause of action, pursuant to 42 U.S.C. § 1983, plaintiff alleges, as against the municipal defendants, Palmer, and Metallo, that excessive force was used against him by Taylor, such force being used as a result of a failure of these named defendants to properly train Taylor, or through an alleged policy of deliberate indifference to student needs, in violation of Fourteenth Amendment of the United States Constitution.

In his *second* cause of action, also pursuant to 42 U.S.C. § 1983, plaintiff alleges, as against Taylor only, that excessive force was used against him by Taylor, in violation of plaintiff's right to be free from excessive force under the Fourteenth Amendment.

In his *third* cause of action, plaintiff alleges, as against all defendants, that defendants breached a duty of care to protect him at school, and that defendants are also liable for prima facie tort and intentional infliction of emotional distress,[1] all in violation of New York State law. Specifically, it is alleged that defendants breached a duty to plaintiff through negligent care and supervision of students, negligent hiring and retention, negligent training, negligent failure to implement and follow proper policies with regard to aggressive behavior at school, and negligent failure to react to incidents of teacher-student violence.

In his *fourth* cause of action, plaintiff alleges, as against Taylor only, that he was assaulted and battered by Taylor, in violation of New York State law.

Defendants moved for summary judgment on all causes of action pursuant to Fed.R.Civ.P. 56. Plaintiff opposes. Oral argument was heard on October 25, 2002, in Albany, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

The following facts are viewed most favorably to the nonmoving plaintiff. At all times relevant, plaintiff was a student at Albany City High School. Taylor was a gym teacher and soccer coach at Albany City High School. Metallo was Principal of Albany City High School. Palmer was Superintendent of Albany City School District.

On April 10, 2000, plaintiff received a hall pass from the school nurse to allow him to locate his track coach. In such effort, plaintiff was attempting to walk

---

1. Plaintiff has "concede[d] that the claim for Intentional Infliction of Emotional Distress should be dismissed." *See* Docket No. 32, p. 19 n. 5.

from one school gymnasium to another school gymnasium. The "gymnasiums" were in actuality the same overall gym, but along with a third "gymnasium," were divided by a curtain, and designated separately to allow multiple physical education classes to occur at the same time. Taylor was the gym class teacher in one of the gyms, and was standing at an opening by a wall where the curtain separating the gyms is located. He was speaking to the teacher of the other gym class.

Teachers and hall monitors at the school circulate through the corridors of the building and ask students for hall passes if they appear unauthorized. If the student is without a pass, he or she is referred to the appropriate administrator. Though it is unclear if this is a policy or rule, Metallo claims he asks teachers to stop students and look at their passes.

As plaintiff approached the opening between the two curtains, Taylor asked to see his hall pass. Plaintiff, without stopping, took a blue piece of paper out of his pocket and held it at face level for Taylor for see. Taylor grabbed plaintiff from behind by the shoulders, spun him around, and then forcefully pushed him into the nearby wall which was made of brick. Despite protests from plaintiff, Taylor continued to pin plaintiff against the brick wall, and demanded a closer look at the hall pass.[2] Plaintiff expressed his belief that it was inappropriate for Taylor "to touch or manhandle students." (Complaint, ¶ 32). Plaintiff may also have said that he would have Taylor "snuffed" out, and that Taylor was merely a soccer coach. Plaintiff then either managed to free himself from Taylor's grip, or the other gym teacher inter-

vened and told him to leave. Taylor told plaintiff he would have him kicked off the track team.

Plaintiff left the school following the incident, and went to his home. He claims he did not report the incident because no one was available to receive such report, and that, in any event, he wanted to speak to his father first. After plaintiff came back to school for track practice, he saw Taylor speaking to his coach. Plaintiff approached the two, and thereafter had a meeting in the Athletic Department office. Plaintiff complained of pain in his neck and back.

In at least some instances, when corporal punishment is alleged, there is an unwritten rule that an administrator trained to fill out the proper Department of Education form is notified and the incident is reported to the school's Director of Security, Paul Petitt ("Petitt"). An investigation is then undertaken, which involves interviewing the student and accused teacher. A report is then issued. This was done in this case. Plaintiff admits that Metallo's only involvement in this case was receipt of Petitt's report of the at issue incident.

When Palmer became aware of plaintiff's allegation, he had the school's attorney review the situation at a weekly meeting. It is unclear if this procedure is followed every time corporal punishment is alleged. Plaintiff does admit, however, that Palmer's first knowledge of the situation was also from Petitt's security report.

As far as training is concerned, teachers are required to complete twenty hours of training per year. Classes are offered, through and catering mostly to special education teachers, on physical restraint of

---

**2.** Plaintiff claims repeatedly in his Response to Defendants' Statement of Material Facts, Docket No. 31, ¶¶ 14, 41, that he was asked only once by Taylor to reveal the pass. In the Complaint, however, plaintiff claims he was asked for the pass twice, once as he was passing Taylor, Complaint, ¶ 25, and again after he was pinned against the wall, Complaint, ¶ 31.

students, but no teacher is required to take these classes. Palmer even admits that it is conceivable that a teacher could be employed at the school for decades without ever having taken a class in physical restraint. There appears to be no indication whatsoever that Taylor was anything but an exemplary teacher prior to April 10, 2002. He had not previously been disciplined on any matter.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Service*, 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. § 1983 Claims

#### 1. Municipal defendants'

"Municipal liability under § 1983 occurs, if at all, at the level of policymaking," *Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir.2000), and therefore may not be imposed vicariously or through a theory of respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Instead, a plaintiff is required to establish a municipal policy, custom, or practice which allegedly deprived him or her of a federal or constitutional right. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Vann v. City of New York*, 72 F.3d 1040 (2d Cir.1995). The policy must be either facially unconstitutional, *Oklahoma City v. Tuttle*, 471 U.S. 808, 822, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), or unconstitutional as applied because of the municipality's "deliberate indifference" to the rights of persons with whom municipal employees may encounter. *Harris*, 489 U.S. at 387, 109 S.Ct. 1197.

Here, plaintiff does not allege the municipal defendants had a facially unconstitutional, or even explicit, policy or custom that was employed in this case to cause him injury. Defendants argue that there was an unwritten rule that teachers are to stop students and visually examine their hall passes. Plaintiff, however, vehemently argues that such is not the policy of the municipal defendants. This is a wise decision on plaintiff's part, for such a policy is

facially constitutional and lawful in all regards, and does not form a basis for municipal liability.

 However, "[t]he policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation." *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 870 (2d Cir.1992). It may instead be inferred from a failure to train, supervise, or discipline employees. *DeCarlo v. Fry*, 141 F.3d 56, 61–62 (1998). When advancing this type of theory, the Second Circuit has identified several hurdles which must be cleared by a plaintiff. First, "a single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991). Indeed, to allow evidence of a single occurrence to establish a municipal policy of failing to properly train and supervise, without any proof regarding the nature of the training itself, would "unduly threaten [a municipality's] immunity from respondeat superior liability." *Tuttle*, 471 U.S. at 830, 105 S.Ct. 2427. Second, "[t]he mere allegation that the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy." *Neighbour v. Covert*, 68 F.3d 1508, 1512 (2d Cir.1995).

Finally, and perhaps most important for liability to attach to the municipality, the failure to train, supervise, or discipline employees must rise to the level of "deliberate indifference." *Harris*, 489 U.S. at 388–89, 109 S.Ct. 1197; *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993).

 "Deliberate indifference" occurs where "conscious disregard" is displayed for the consequences of actions, not just "simple or even heightened negligence." *Bd. of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To prove "deliberate indifference," a plaintiff must demonstrate that: (1) "a policymaker knows 'to a moral certainty' that [his or] her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the [municipality] employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992) (internal quotations and citations omitted).

Though plaintiff dresses his § 1983 claims in different and sometimes confusing and legally incorrect garb,[3] his essen-

---

3. For example, plaintiff's first cause of action alleges defendants "have a custom, policy, practice, and/or procedure of failing to properly train, supervise, and/or discipline the agents, servants and/or employees of the DISTRICT and SCHOOL." Complaint, ¶ 47. "In the alternative, defendants, acting jointly and in concert, have a' custom, policy, practice and/or procedure of and have exhibited a deliberate indifference to their students' needs, in that such defendants allowed and permitted a student to be violently attacked by a teacher and coach while under their supervision, care and control." *Id.* at ¶ 49. As plaintiff is presumably aware, a failure to properly train, supervise, or discipline is merely a type of deliberate indifference which can be alleged to hold a municipality liable for an inferred, circumstantial policy. Nowhere in ¶ 47, however, does the phrase "deliberate indifference" appear. It seems to be consistent with reason that, since such phrase is asserted in the "alternative" ground for relief asserted, it's appearance in ¶ 47 was not intended and cannot be implied. As plaintiff is also presumably aware, a single incident, as is alleged by the language of ¶ 49, can in almost no circumstances, and in none applicable here, form the basis of an inference of a municipal policy such that a municipality can be liable. Therefore, both allegations are technically insufficient. However, in the interests of adjudicating cases on their merits,

tial arguments square with the case law classifying the claims as deliberate indifference by way of failure to train, or deliberate indifference by way of failure to supervise. Both of these claims will be addressed in turn.[4]

### a. *Failure to train*

▇▇▇▇ Though the Supreme Court in *Harris* was faced with allegations of police misconduct, rather than teacher misconduct, it offered insight into the circumstances under which a municipality may incur liability for a failure to train its employees. Liability may not simply be imposed because an employee has been unsatisfactorily trained, "for the officer's shortcomings may have resulted from factors other than a faulty training program." *Harris*, 489 U.S. at 390–91, 109 S.Ct. 1197. Nor may liability be imposed because an otherwise sufficient training program was negligently administered, or because the conduct imposing the injury could have been prevented through more extensive or higher quality training. *Id.* A plaintiff must instead go beyond a conclusory claim of a need for training and demonstrate "how a particular policymaker's specific choice with respect to the training deficiency at issue reflects 'deliberate indifference' to their constitutional rights, and how this indifference caused their injuries." *Ferreira v. Westchester County*, 917 F.Supp. 209, 215–16 (S.D.N.Y.1996).

Plaintiff, in essence, alleges that the lack of training played a significant part in his being allegedly injured, but he offers no evidence to demonstrate that the training program in place, or lack thereof, amounted to a deliberate indifference to his rights. "In virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *See Harris*, 489 U.S. at 392, 109 S.Ct. 1197. As the Supreme Court said, to allow a plaintiff to proceed on such a theory would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *Id.* In short, plaintiff has demonstrated no causal link between the alleged lack of or insufficient training and his alleged injuries.

Further, plaintiff offers no proof that Taylor, or any of the defendants for that matter, were the subject of severely insufficient training, or that Taylor or any other defendant were not subject to the same training every other employee was required to undertake. While it may be advisable to make physical restraint training mandatory, it is perfectly reasonable to allow teachers or employees to choose courses, amounting to the not so small figure of twenty hours a year, that would be the most help to them in their respec-

---

and out of an understanding, by defendants and by a reading of the record, of the relief sought, the benefit of the doubt is given to plaintiff and it will be assumed that plaintiff is arguing that the deliberate indifference is demonstrated through a failure to train or, in the alternative, a failure to supervise/discipline.

**4.** It should also be noted that some courts have held that "[i]t is well established that the Second Circuit has held that there is no cause of action for damages under § 1983 against a School Board ..." *Jamieson v. Poughkeepsie City School District*, 195 F.Supp.2d 457, 470 (S.D.N.Y.2002) (citations omitted). Because, however, plaintiff cannot survive the municipal defendants' summary judgment motion, other grounds will be discussed and will be the basis of the ruling herein.

tive positions. What may be appropriate and needed training for one teacher may not be appropriate and needed for another teacher. Whatever the intricacies of the training program at the school, it certainly did not amount to a deliberate indifference to plaintiff's or any other students' rights.

### b. *Failure to supervise/discipline*

 Deliberate indifference may also be inferred from a failure to supervise, such as when meaningful attempts to investigate repeated claims of excessive force are absent. *Vann,* 72 F.3d at 1049. The existence of repeated complaints, however, is not sufficient; rather, it is the combination of such complaints with the municipality's response which "tip[s] the scales toward the probative." *Mendoza v. City of Rome,* 872 F.Supp. 1110, 1118 (N.D.N.Y.1994). For deliberate indifference, to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints. *Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir.1986) (knowledge of prior allegations of excessive force can form the basis of a finding of deliberate indifference, even where "none of the claims ha[s] yet been adjudicated in favor of the claimant," so long as "the [municipality's] efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of the indifference to the truth of the claim"); *Baker v. Willett,* 42 F.Supp.2d 192, 200 (N.D.N.Y.1999) ("The fact that no formal investigation ensued subsequent to the incident in this case, and that Willett was not disciplined, does not provide a basis for municipal liability"). Simple disagreement with the nature or extent of punishment imposed on an official as a result of his actions will not demonstrate a municipal policy of failure to supervise. *See Sarus v. Rotundo,* 831 F.2d 397, 401–02 (2d Cir.1987).

Plaintiff alleges that repeated complaints have been lodged against teachers by students for unnecessary or inappropriate use of force. There is no evidence in the record to support this. Plaintiff produces neither copies of investigative reports, nor does he provide a scintilla of evidence that any investigation into past complaints was inappropriate. Even if such complaints were to exist, and it is assumed that teachers were found by an investigator to have engaged in unlawful conduct, plaintiff offers no evidence that the school's subsequent response was inappropriate, much less completely unjustified so as to exhibit the requisite deliberate indifference.

In this case, it can only be stated that plaintiff merely disagrees with the lack of punishment imposed on Taylor. It does not seem to be contradicted that plaintiff, Taylor, and the other gym teacher were interviewed. This, it seems, is a reasonable method of investigating the type of allegation made by plaintiff. If it is indeed unreasonable, plaintiff has failed to so demonstrate, and has certainly failed to demonstrate that such unreasonableness amounts to a deliberate indifference to plaintiff's rights. The municipal defendants' motions for summary judgment on plaintiff's *first* cause of action must be granted.

### 2. *Liability of Palmer and Metallo*

 The essential principles espoused in Monell apply equally to defendants sued in their official capacities. *See Monell,* 436 U.S. at 690 n. 3, 98 S.Ct. 2018. Palmer and Metallo are both, for purposes of this opinion at least, municipal supervisors. A municipal supervisor may incur liability for a constitutional deprivation if he or she had personal involvement in said deprivation by: (1) directly participating; (2) failing to

remedy the deprivation after being made aware of it through a report or an appeal; (3) creating or maintaining a custom or policy fostering the deprivation or allowing the custom or policy to continue after being made aware of it; (4) being grossly negligent in supervising employees who caused the deprivation; or (5) exhibiting deliberate indifference to persons' rights by failing to act on information demonstrating that deprivations were occurring. *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 254 (2d Cir.2001) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).

Plaintiff admits that "Dr. Metallo's only involvement in the entire occurrence was receipt of the report from Mr. Petitt and a brief discussion with Hall Principal Salvatore Villa." *See* Defendants' Statement of Material Facts, Docket No. 27, ¶ 68; Plaintiff's Response to Defendants' Statement of Material Facts, Docket No. 31, ¶ 68. Receipt of an investigative report can hardly form a basis for liability. Plaintiff has not demonstrated that Metallo failed to subsequently act. Petitt had taken the reasonable and obvious steps with regard to plaintiff's allegations, and plaintiff has submitted no evidence to indicate that Metallo should be faulted for relying on Petitt's investigation and report. In addition, Petitt was directed to inform Metallo if anything further was discovered. The mere fact that nothing was subsequently discovered does not automatically signal that the investigation and actions of the school district officials was erroneous.

Plaintiff also admits that "Mr. Palmer's first knowledge of the incident was in the investigation report provided by Paul Petitt, the School's Director of Security." *See* Defendants' Statement of Material Facts, Docket No. 27, ¶ 50; Plaintiff's Response to Defendants' Statement of Ma-

terial Facts, Docket No. 31, ¶ 50. The only acts attributable to Palmer after gaining knowledge of the report were the instruction given to Metallo to cooperate and inform him if any new developments arose, and informing an attorney for the school of the incident. Without further proof from plaintiff, these acts, as a matter of law cannot form the basis for Palmer's liability.

Even if plaintiff had submitted the requisite proof to at least raise material questions of fact as to Metallo's and Palmer's liability as municipal supervisors, it is clear that both are entitled to summary judgment based on a defense of qualified immunity. The defense of qualified immunity "shields government actors from liability if they did not violate clearly established law, or if it was objectively reasonable for such actors to believe that their actions did not violate clearly established law." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir.2002). Notwithstanding the fact that the actions of Metallo and Palmer, in and of themselves, did not violate any of plaintiff's constitutional rights, it is evident that their actions were objectively reasonable. Instructing possible further investigation, and wanting to keep apprised of any change in investigative findings, are certainly reasonable steps to take when faced with allegations of excessive force. Metallo's and Palmer's motions for summary judgment on plaintiff's *first* cause of action, as against them in their official and individual capacities, must be granted.

### 3. *Liability of Taylor*

Taylor, on the other hand, is not entitled to summary judgment on plaintiff's *second* cause of action under § 1983, which is stated solely against him. It is clear that Taylor was personally involved in the alleged deprivation. He allegedly used excessive force against plaintiff by grabbing him, slamming him against the

wall, and holding him there without provocation or justification. Taking the facts alleged by plaintiff as true, this conduct would "shock the conscience," *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir.1995), and as such, constitute the requisite deprivation of plaintiff's right to be free from use of such force. Taylor's liability must be decided by the jury, as it is inappropriate to make such a determination at this stage. Taylor, in addition to having arguably legitimate qualms with the facts as alleged by plaintiff, may also have a colorable defense of qualified immunity. Taking the facts as alleged by plaintiff as true, however, it cannot be said that forcefully grabbing and shoving a student against a brick wall without reason or provocation is objectively reasonable. *See Johnson*, 239 F.3d at 249–54 (denying teacher qualified immunity defense where teacher grabbed student by throat, dragged him across the floor, slammed his head into bleachers, and punched him). Thus, the availability of any defenses Taylor has is a matter for the jury.

## C. *State Law Claims*

### 1. *Negligence claims*

■■■■ It is well settled that "defendants cannot be held liable for their alleged negligent hiring, training, supervision, or retention of [an employee accused of wrongful conduct] unless they had 'notice [of said employee's] propensity for the type of behavior causing plaintiff's harm.'" *Paul J.H. v. Lum*, 291 A.D.2d 894, 736 N.Y.S.2d 561, 562 (4th Dept.2002) (citations omitted); *Oliva v. City of New York*, 297 A.D.2d 789, 748 N.Y.S.2d 164, 166 (2d Dept.2002) (negligent hiring); *Hahne v. State*, 290 A.D.2d 858, 736 N.Y.S.2d 761, 763 (3d Dept.2002) (negligent supervision); *see also Daniels v. Loizzo*, 174 F.R.D. 295, 299 (S.D.N.Y.1997) (negligent retention and supervision); *Yanez v. City of New York*, 29 F.Supp.2d 100, 112 (E.D.N.Y. 1998). Plaintiff has admitted that no prior disciplinary action had been taken against Taylor, and has indicated nothing to suggest that Taylor had a propensity to commit the kind of conduct plaintiff alleges he committed.[5] Thus, to the extent plaintiff's *third* cause of action is based on a theory of negligent hiring, retention, supervision, or training of Taylor, it must be dismissed.[6]

■■■■ Similarly, to the extent that this cause of action is based on the breach of a general duty of care owed to students,

---

**5.** Even assuming defendants were aware of some propensity of Taylor to engage in the alleged conduct, proximate causation cannot be proven, as plaintiff has presented no evidence linking the decisions to hire and retain Taylor, and the alleged failure to train, supervise, or discipline Taylor, with the alleged injury suffered.

**6.** It is difficult to see why Taylor is also named as a defendant in the *third* cause of action. He did not "hire, retain, provide or otherwise employ" himself. *See* Complaint, ¶ 67b. Nor is he culpable in "failing to conduct a reasonable investigation into the background" of himself, or in "failing to exercise reasonable care to assure that [he himself] [was] fit to work with and around students." *Id.* at ¶¶ 67c, 67d. It is also difficult to fathom how he could incur liability for "negligently and carelessly retaining employees, particularly, [himself]," or for "failing to train [himself]." *Id.* at ¶¶ 67e, 67f. Plaintiff also charges defendants, including Taylor, with "failing to establish, implement and follow proper policies and/or guidelines with regard to aggressive behavior of [school] employees." *Id.* at ¶ 67g. Taylor, as a teacher, was not in a position to "establish" or "implement" policies, and plaintiff's allegation cannot be read to mean Taylor failed to "follow" proper policies because, taking plaintiff's factual allegations as true, there were no policies. In short, the allegations contained in the third cause of action are quite obviously geared toward the municipal defendants and Palmer and Metallo.

as plaintiff also seems to allege, it must also be dismissed. The degree of care owed by a school to its student is that degree of supervision that a reasonable parent would undertake in the same or similar circumstances. *See Gonzalez v. City of New York*, 286 A.D.2d 706, 730 N.Y.S.2d 154, 155 (2d Dept.2001). Here, Metallo and Palmer both dealt with the situation as it was presented to them, via report by Mr. Petitt, in a prompt and reasonable manner. Palmer made an attorney for the school district aware of the situation, and instructed Metallo to cooperate fully with any further investigation into plaintiff's allegations. Plaintiff has not sufficiently alleged or proven that Mr. Petitt engaged in an inadequate investigation. The pertinent actors in, and witnesses to, the incident were interviewed, and a fair degree of consistency was present in most accounts. Plaintiff cannot hold Metallo and Palmer liable for entrusting the handling of the incident to a person who, by all indications, performed his job in the only way foreseeable. Therefore, the *third* cause of action, to the extent ordinary or gross negligence is alleged at all against any defendant named therein, will be dismissed.

### 2. *Prima facie tort claim*

Defendants have moved for summary judgment on plaintiff's prima facie tort claim. In order to recover under a claim of prima facie tort, a plaintiff must prove four elements: "1) intentional infliction of harm, 2) causing special damages, 3) without excuse or justification, 4) by an act or series of acts that would otherwise be lawful." *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F.Supp.2d 455, 465 (E.D.N.Y.2002); *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324 (Ct.App.1984). "Prima facie tort is a disfavored claim under New York law," *Hall v. City of White Plains*, 185

F.Supp.2d 293, 304 (S.D.N.Y.2002), and "may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (Ct.App. 1985).

With respect to the first element, that the defendant act with the intent to harm, "plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *See Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990) As is implied by the term "sole," if a defendant has any other motive in taking the actions it did, or abstaining from taking action, a plaintiff cannot recover as against that defendant for prima facie tort. Matello and Palmer's actions, and therefore the municipal defendants' actions, i.e., reviewing the investigation report from Petitt and insisting on full cooperation, cannot be said to be done with the sole intent to harm plaintiff. If anything, their actions were meant to help plaintiff, and ensure full complicity with any law that needed to be followed.

The same is true with respect to Taylor. Even if one of Taylor's intents was to harm plaintiff, as plaintiff alleges, it is also plainly evident that another of his intents was to determine if plaintiff was properly in the gymnasium. Taylor stopped plaintiff, at least in part, in furtherance of the goal of not having students without passes roaming the school. The existence of this other intent is enough to defeat plaintiff's prima facie tort claim against Taylor. Summary judgment will be granted to all named defendants in plaintiff's *third* cause of action.

### 3. *Assault and battery*

Plaintiff's *fourth* cause of action asserts a claim for assault and battery

against Taylor. "An 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact," and "[a] 'battery' is an intentional wrongful physical contact with another person without consent." *United National Ins. Co. v. Waterfront New York Realty Corp.,* 994 F.2d 105, 108 (2d Cir.1993). Taking plaintiff's factual averments as true, meaning, assuming Taylor "[s]uddenly, without provocation, justification, or warning, . . ., slammed his hands onto plaintiff's shoulders and grabbed hold of plaintiff," and "then forcefully pushed, shoved, and otherwise propelled plaintiff into a solid brick wall," it is clear that Taylor cannot be granted summary judgment on this claim. *See* Complaint, ¶¶ 26, 28.

## IV. *CONCLUSION*

Plaintiff has not alleged sufficient evidence to overcome summary judgment on his § 1983 "Monell" claim, nor can the record warrant a denial of summary judgment on his negligence, gross negligence, and prima facie tort claims. The claims against only Taylor, however, i.e., the § 1983 claim and the state law assault and battery claim, do raise material issues of genuine fact, and are thus not subject to dismissal.

Accordingly, it is

ORDERED that

1. Defendants, Albany City School District, Albany City High School, Lonnie Palmer, and John Metallo's, motion for summary judgment is GRANTED, and the *first* and *third* causes of action are DISMISSED;

2. Defendant Stuart Taylor's motion for summary judgment is GRANTED in part; and the *third* cause of action is DISMISSED; and

3. Defendant Stuart Taylor's motion for summary judgment on plaintiff's *sec-* *ond* and *fourth* cause of action is DENIED.

IT IS SO ORDERED.